```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
LEXJAC, LLC and RICHARD ENTEL,

                    Plaintiffs,            MEMORANDUM & ORDER
                                           07-CV-4614 (JS)(ARL)
          -against-

JULIANNE W. BECKERMAN, individually
and as Mayor of the Incorporated
Village of Muttontown, CARL JUUL-NIELSON,
J. RANDOLPH BARTHOLOMEW, STEVEN FINE
and PAT MILLER, individually and in
their official capacities as MEMBERS
OF THE BOARD OF TRUSTEES of the
Incorporated Village of Muttontown,
THE BOARD OF TRUSTEES OF THE
INCORPORATED VILLAGE OF MUTTONTOWN,
THE INCORPORATED VILLAGE OF MUTTONTOWN
and BONNIE O'CONNELL.

                    Defendants.
----------------------------------------X
APPEARANCES:
For Plaintiffs:     Laurel R. Kretzing, Esq.
                    Steven R. Schlesinger, Esq.
                    Seth Presser, Esq.
                    Jaspan, Schlesinger & Hoffman, LLP
                    300 Garden City Plaza
                    Garden City, NY 11530

For Defendants:     Steven G. Leventhal, Esq.
                    Huy Tu Nguyen, Esq.
                    Leventhal and Sliney LLP
                    15 Remsen Avenue
                    Roslyn, NY 11576
```

SEYBERT, District Judge:

Pending before this Court is a motion brought by Defendant Bonnie O'Connell ("O'Connell") to disqualify Plaintiffs' represented law firm, Jaspan, Schlesinger & Hoffman, LLP. For the reasons set for below, the motion to disqualify is GRANTED.

BACKGROUND

The full facts of this case are set forth in detail in this Court's September 30, 2008 Order denying in part and granting in part the various motions to dismiss filed in this case. The Court addresses only those facts relevant for an understanding of the pending motion to disqualify.

I. The Underlying Property Dispute

The underling claims in this matter stem from a property dispute over a 1.1 acre parcel of land (the "Property") in the Village of Muttontown, New York (the "Village"). The property concerned in this dispute is located adjacent to Plaintiffs' residential property. Lexjac, LLC is a domestic limited liability company with its principal place of business in the Village. Plaintiff Richard Entel ("Entel") is the sole member and owner of Lexjac and resides adjacent to the Property at the center of this dispute. Defendant O'Connell is an individual residing in Muttontown who is the President of the Pond's Edge Civic Association ("Pond's Edge").

In brief, Plaintiff Entel and the Village dispute the ownership of the Property. In 2003, Entel purchased the Property from the previous owner, Foreal Homes, Inc ("Foreal"), for $90,000.00. Entel intended to incorporate the Property into the yard of his residence, which adjoined the Property. On February 26, 2004, Foreal executed a deed to Lexjac as assignee of Entel,

which was recorded in the office of the Nassau County Clerk on May 17, 2004.

However, at the time of Entel's purchase, the property still had an open Offer of Dedication for a recreational area, which Foreal had made to the Village in 1972. The Offer of Dedication had been neither accepted nor rejected between 1972 and Plaintiffs' purchase in 2003. On October 17, 2005 the Village Board of Trustees adopted a resolution (the "October 2005 Resolution") declining the Offer of Dedication made in 1972. The resolution provided that "any and all right, title and interest the Village of Muttontown may have to the parcel is hereby extinguished." In exchange for the resolution, Lexjac agreed to plant and maintain screen planting and that he would not develop the Property.

In 2006, Entel was a candidate for the Office of Mayor of the Village. The Mayor, Julianne W. Beckerman (the "Mayor") whom Entel was running against, was actively supported by Defendant O'Connell, the President of the Pond's Edge Civic Association, who has long advocated for the Village to create a recreational park on the Property. In her attempts to secure approval for the creation of a park, O'Connell objected to the October 2005 Resolution, and at her behest, the Village required Plaintiffs to make certain landscaping improvements to the Property. Shortly after the Mayor was elected, Entel went to the office of the Mayor to speak to her

about his plumbing investigation.  During the conversation, the Mayor raised the issue of the Property, although it was unrelated to Plaintiffs's question regarding his plumbing inspection.  The Mayor allegedly accused Entel of seeking to sell the Property for development, and informed Entel that O'Connell had said that Entel had "stolen" the Property from the Village.  Thereafter, the Mayor and O'Connell publicly requested that the Village investigate the October 2005 Resolution declining the Offer of Dedication.

On July 10, 2007, as a result of the investigation, the Village adopted a resolution ("July 2007 Resolution"), allegedly without notice to Plaintiffs, which rescinded the October 2005 Resolution and accepted the original Offer of Dedication made by Foreal.  Furthermore, the July 2007 Resolution directed that the Foreal Deed be recorded with the Nassau County Clerk, "conveying to and vesting in the Village all right, title and interest in the Property."  (Complaint ¶ 55.)

Plaintiffs commenced suit pursuant to 42 U.S.C. § 1983, alleging violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  Plaintiffs contend that Defendant O'Connell conspired with the other Defendants to deprive Plaintiffs of their constitutional rights.

## II.  Facts Pertinent to Motion to Disqualify

O'Connell moves to disqualify Jaspan Schlesinger Hoffman LLP ("Jaspan") as Plaintiffs' counsel on the grounds that Chris J.

Coschignano, Esq. ("Coschignano"), a partner with the firm, represented O'Connell in the past, and that O'Connell confided in Coschignano with the belief that Coschignano would represent O'Connell if she were to initiate legal proceedings against Plaintiffs.

Jaspan argues that disqualification is not warranted because Coschignano did not represent O'Connell in this matter, and the only attorney/client relationship between Coschignano and O'Connell existed in March of 2004, when Coschignano prepared O'Connell and her husband's wills. Jaspan does not deny that O'Connell approached Coschignano to discuss certain concerns she had regarding Plaintiffs' property. However, Jaspan argues that O'Connell's conversations with Coschignano did not establish an attorney/client relationship because O'Connell did not approach Coschignano with the intent to retain him, and rather spoke with Coschignano because of his position as Town Councilman. Jaspan further argues that O'Connell either knew of or should have known of Coschignano's professional relationship with Entel, and that O'Connell never divulged confidential or privileged information.

The Court held a hearing on the motion to disqualify on October 31, 2008.[1] At the hearing, Lori Skurnik ("Skurnik")

---

[1] On October 10, 2008, the parties appeared before the Court for a status conference regarding the motion to disqualify. During the conference, the Court clarified that it was concerned with Coshignano's conversations with O'Connell. The Court further explained that it scheduled a hearing, rather than

5

testified that she was the secretary of Pond's Edge in 2005, and as Secretary, was responsible for recording the minutes of the association's meetings. Skurnik testified that the Pond's Edge members were concerned about whether they had any rights to the Property and whether they "could take some kind of action to get the land back for [the] community." (Hr'g Tr. 10:6, Oct. 31, 2008).

On May 19, 2005, the Board of Directors of Pond's Edge held a meeting, wherein Skurnik recorded the following minutes:

> Then Bonnie spoke with Peter McKenna, Village Attorney, explaining the history of the land within the community and how Entel's managed to buy it without anyone in the community being informed. McKenna said the community can make application [sic] to the town to make it a park, we have that right - We don't need an attorney. Though he recc. [sic] That perhaps we do . . . 5. Talk with a lawyer informally about what it would cost - Chris Cashignano [sic] - town councilman and attorney - Bonnie will call him.

(O'Connell Aff. in Opp to Mot. to Dis. Ex. A).

O'Connell testified that she had retained Coschignano in

---

deciding the motion from the papers alone, to provide Coschignano with an opportunity to elaborate on "why he provided advice to Ms. O'Connell knowing she was an integral defendant in the potential case." (Hr'g Tr. 2:18, Oct. 10, 2008). The Court directed the parties to provide a hearing date on which Coschignano would be available to testify. (Id. 4:13). The Court notes that Coschignano's failure to appear at the October 31, 2008 hearing, coupled with Jaspan's acknowledgment that Coschignano did, in fact, provide information regarding the Property to O'Connell during a time when he represented Entel in connection with the very same Property, speaks volumes.

6

the past, in approximately March of 2004, to prepare O'Connell and her husband's will. At some point, O'Connell contacted the Village Attorney to discuss the property dispute. The Village Attorney cautioned that he could not provide legal advice, and advised O'Connell to speak with another attorney for guidance on the matter. The Village Attorney suggested speaking with Coschignano. Because of her familiarity with Coschignano, and the Village Attorney's suggestion, O'Connell called Coschignano in late May of 2005 for "direction and guidance as to what [Pond's Edge] could do to resolve the situation." (Hr'g Tr. 21:24, Oct. 31, 2008). Coschignano suggested that O'Connell visit his office to discuss the matter. (Id. 21:25-26:1).

In June of 2005, Skurnik, along with O'Connell and Wai Lam, another Pond's Edge member, met with Coschignano at his office "to obtain his advice about what action [Pond's Edge] might be able to take about this piece of property as a community." (Hr'g Tr. 9:18, Oct. 31, 2008). Skurnik testified that Pond's Edge was trying to obtain "objective advice" from Coschignano, and that Coschignano advised the group that it would be "extremely difficult" to obtain the land, and Pond's Edge would "be better off getting concessions about the land" because "Entel had a lot of money and he could sue [Pond's Edge] and keep [Pond's Edge] in court for many years." (Id. 10:10-14). O'Connell similarly testified that Coschignano informed the group that it would be

7

difficult for Pond's Edge to get the land back from Entel. O'Connell further testified, "[Coschignano] said [Pond's Edge] would be much better off if [they] told him what things the community wanted, and he would be able to - - he felt he would be able to get these concessions, that he would be able to speak to Mr. Entel and get . . . our point across and get these concessions." (Hr'g Tr. 22:24, Oct. 31, 2008). Both Skurnik and O'Connell testified that they did not know about Coschignano's relationship with Entel, and Coschignano did not volunteer this information during the meeting.

On June 5, 2005, the Pond's Edge Board of Directors held another meeting, wherein the following notes were recorded:

> Then Bonnie met with Chris Coschignano, Oyster Bay Councilman . . . . He indicated that we could pursue it but it would be really hard and that entel [sic] could prob. Sue [sic], hold us up in court for years, and then said that anything else we wanted we could basically have, e.g. we can have him keep the fence - has to be an estate fence-where it is, . . . we get approval of landscaping plan at his cost - ask him to take down the lights, etc. - does he have right to access to Noel Lane? Cannot put the pool on that land-or any other kind of structure - no permit can ever be issued - To make it a park, town would have to condemn the land, buy it back from Entel - then declare it a park. But they could permanently designate as park land - not buildable - has to pass some legislation to make that happen. . . . Possibly June 20-21 for mtg with Cashignano [sic]. We should have a meeting with Coschignano.

(O'Connell Aff. Ex. B.)

Finally, on August 15, 2005, O'Connell wrote a letter to Coschignano which stated,

> It has been some time since we all met and I wanted to bring you up to date on what is happening as well as ask you a few more questions . . . . Lastly, if the village had the right to make this a park when Mr. Forte owned the land, why would they have to buy it back from Mr. Entel before making it a park? . . . . Thanks so much for your continued assistance in this.

(O'Connell Aff. Ex. D).

## DISCUSSION

I. <u>Standard of Review</u>

Disqualification of a party's chosen counsel is a severe decision, and "[u]nless there is a risk of taint to a court proceeding, courts are quite hesitant to disqualify an attorney from representing his client in litigation." <u>Med. Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC</u>, 542 F. Supp. 2d 296, 306 (S.D.N.Y. 2008). "Courts are reluctant to grant such motions because they are often tactically motivated, cause undue delay, add expense, and have 'an immediate adverse effect on the client by separating him from counsel of his choice. . . .'" <u>Drag Racing Technologies, Inc. as D.R.T., Inc. v. Universal City Studios, Inc.</u>, 2003 WL 1948798, at * 2 (S.D.N.Y. 2003) (quoting <u>Board of Education v. Nyquist</u>, 590 F.2d 1241, 1246 (2d Cir. 1979)). However, although disqualification is rare, there are times where it may be warranted to "maintain the highest standards of the profession" <u>Hempstead</u>

9

Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. N.Y. 2005). Finally, "[w]hen a party moves for the disqualification of his adversary's attorney, 'any doubt is to be resolved in favor of disqualification.'" Blue Planet Software, Inc. v. Games Int'l, LLC, 331 F. Supp. 2d 273, 275 (S.D.N.Y. 2004) (quoting Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975)).

Although not binding, "disqualification motions often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules." Id., 409 F.3d at 132. Canon 4 of the New York Lawyer's Code of Professional Responsibility states that a "lawyer should preserve the confidences and secrets of a client" and Canon 9 cautions that a "lawyer should avoid even the appearance of impropriety." However, "with rare exceptions[,] disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests . . . undermines the court's confidence in the vigor of the attorney's representation of his client, . . . or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, . . . thus giving his present client an unfair advantage." Board of Education v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979) (internal citations and quotations omitted). Here, the Court is concerned with the latter: whether O'Connell, along with other Pond's Edge members, confided in Coschignano under the assumption

10

that they were obtaining legal advice and had an attorney-client relationship, and whether Coschignano became privy to confidential information that could be used against O'Connell in this matter.

The Second Circuit has guided that in cases involving successive representation, an attorney may be disqualified if:

> (1) the moving party is a former client of the adverse party's counsel;
>
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
>
> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

Hempstead Video, 409 F.3d at 133 (citing Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983)).

Here, it is undisputed that neither O'Connell nor Pond's Edge formally retained Coschignano to represent them in this matter. It is also clear that O'Connell paid Coschignano legal fees only once in the past, to draft her last will and testament in 2004. However, the fact that O'Connell did not pay a fee and formally retain Coschignano is not conclusive on the issue of whether O'Connell had an attorney-client relationship with Coschignano, and whether there is a risk of taint in this matter based upon successive representation. See Blue Planet Software, Inc. v. Games Int'l, LLC, 331 F. Supp. 2d 273, 276 (S.D.N.Y. 2004)

("[A]mple case law makes clear that an attorney nonetheless may be disqualified despite the lack of a formal attorney-client relationship; other factors may mandate denying one party her attorney of choice so as to avoid fundamental unfairness."); see also Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc., 325 F. Supp. 2d 270, 277 (S.D.N.Y. 2004) ("[A] lawyer need not have an express attorney-client relationship with the former client.").

Although there is no "single, well-defined test for determining whether an attorney client relationship exists," most courts have held that "an attorney-client relationship exists if the party divulging confidences and secrets to an attorney believes that he is approaching the attorney in a professional capacity with the intent to secure legal advice." Fierro v. Gallucci, No. 06-CV-5189, 2007 U.S. Dist. LEXIS 89296, 18-17 (E.D.N.Y. Dec. 4, 2007).

Here, the Court finds that O'Connell did, in fact, approach Coschignano with the intent to secure legal advice on this matter, and that O'Connell and other Pond's Edge members provided Coschignano with confidential information. Jaspan does not dispute that Coschignano spoke with O'Connell and discussed the Property during a time when Coschignano was counsel for Entel. Jaspan merely argues that Coschignano and O'Connell did not enter into a formal attorney-client relationship, and that O'Connell did not impart any confidential information. However, despite the fact that the parties had not entered into a formal retainer agreement,

12

the Court finds that Coschignano repeatedly provided O'Connell with advice regarding the Property by informing O'Connell that litigation would be costly and time-consuming, and that certain concessions might be obtained from Entel. The minutes from the various Pond's Edge meetings reveal that Coschignano's advice was rather detailed. For example, Coschignano informed O'Connell that Pond's Edge might be able to get landscaping costs from Entel and have him take down certain lights, but would not be able to build a pool or any other structure on the Property because a permit would not be issued. A reasonable attorney would have had reason to believe that O'Connell was contacting him for legal advice, as evidenced by O'Connell's continued interaction with Coschignano in this matter, and her August 2005 letter, wherein O'Connell states that it has been "some time since we all met" and that she "wanted to bring [Coschignano ] up to date on what is happening as well as ask [him] a few more questions."

Additionally, the Court finds that O'Connell disclosed confidential information with the belief that an attorney-client relationship existed. The Court rejects Jaspan's argument that Coschignano did not become privy to confidential information. At the outset, the Court notes that it "need not 'inquire whether the lawyer did, in fact, receive confidential information. . . ." Hull v. Celanese Corp., 513 F.2d 568, 572 (2d Cir. N.Y. 1975) (quoting Emle Industries, Inc. v. Patentex, Inc., 478 F. 2d 562, 571 (2d

13

Cir. 1973)). "Rather, where 'it can reasonably be said that in the course of the former representation the attorney might have acquired information related to the subject matter of his subsequent representation, . . . it is the court's duty to order the attorney disqualified." Id. (Internal citations and quotations omitted).

However, in this case, the record reveals that O'Connell did disclose information that could be considered confidential; specifically, O'Connell informed Coschignano of what she wanted to do with the disputed Property, and the extent to which she was willing to expend her time and resources to gain the property. The Court finds that this information can certainly be used in Plaintiffs' favor in this matter. Moreover, Coschignano potentially sought out confidences from O'Connell by asking her to inform Coschignano of the concessions that Pond's Edge wanted so that Coschignano could attempt to obtain such concessions on Pond's Edge's behalf.

The information imparted by O'Connell is substantially related to the litigation in this case. "Determining substantial relationship requires a determination with respect to whether the facts which were necessary to the first representation are necessary to the present litigation." Blue Planet Software, Inc. v. Games Int'l, LLC, 331 F. Supp. 2d 273, 277 (S.D.N.Y. 2004) (internal quotations and citations omitted). Plaintiffs argue,

14

inter alia, that O'Connell conspired with others to deprive Plaintiffs of their right to the disputed Property. Specifically, Plaintiffs claim that O'Connell allegedly told the Mayor that Entel had "stolen" the Property from the Village, and improperly requested that the Village investigate the October 2005 Resolution declining the Offer of Dedication. O'Connell disagrees that Plaintiffs had a legal right to the Property, and has asserted a counter-claim arguing that Plaintiffs initiated the lawsuit for the purpose of harassing O'Connell for her voiced objections and speech regarding the Property. The facts underlying the claims in this case significantly overlap with the facts involved in O'Connell's conversations with Coschignano, wherein O'Connell discussed Entel's legal rights to the very same Property involved in this case, and Pond's Edge's ability to gain the Property back for their use. The Court finds that there is a substantial relationship between this litigation and Coschignano's perceived representation of O'Connell in the past.

Finally, the Court finds that it was reasonable for O'Connell to believe that the information she disclosed would be protected by the attorney-client privilege. After contacting Coschignano via telephone to discuss the matter, Coschignano invited O'Connell to his office to discuss the matter further. At no time during the meeting did Coschignano reveal that he represented Entel in connection with the sale of the Property and

15

that he was Entel's attorney.  Plaintiff has not submitted any evidence to show that O'Connell knew that Coschignano represented Entel, and that therefore it would be unreasonable for O'Connell to confide in Coschignano.  Although O'Connell admitted to seeing Coschignano's name on the deed for the Property, the Court finds that it was reasonable for O'Connell to believe that Coschignano represented Foreal, or that Coschignano's name was on the deed because of his position as Town Councilman.

The fact that Coschignano is not an attorney of record will not purge the risk of taint in this matter.  "An attorney's conflicts are ordinarily imputed to his firm based on the presumption that "associated" attorneys share client confidences." <u>Hempstead Video</u>, 409 F.3d at 133.  Coschignano is a partner at a law firm where at least three other attorneys have been retained to represent Plaintiffs in this matter.  Jaspan has not presented, nor has the Court found, any evidence to rebut the presumption that confidences have been shared between attorneys at the firm.

Based on the above findings, the Court finds that Defendant O'Connell has met the extremely high burden of showing that disqualification is merited.  It is clear that O'Connell revealed confidences related to this matter to Coschignano under the assumption that an attorney-client relationship existed.  For these reasons, the Court finds that Jaspan's continued representation of Plaintiff would taint this legal proceeding and

16

would potentially violate Canons 4 and 9 of the New York Lawyer's Code of Professional Responsibility, and therefore GRANTS Defendant O'Connell's motion to disqualify.

CONCLUSION

For the reasons stated above, and based on the evidence submitted at this Court's October 31, 2008 evidentiary hearing, the Court finds that Defendant O'Connell has met her burden of showing that disqualification is merited here. Jaspan Schlesinger & Hoffman, LLP, is hereby disqualified from representing Plaintiffs in this matter. This case shall be stayed for thirty (30) days to provide Plaintiffs with an opportunity to retain new counsel.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
       November  14 , 2008