UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
LEXJAC, LLC and RICHARD ENTEL,

                    Plaintiffs,          MEMORANDUM & ORDER
                                         07-CV-4614(JS)
        -against-

THE INCORPORATED VILLAGE OF
MUTTONTOWN,

                    Defendant.
----------------------------------X
APPEARANCES:
For Plaintiffs:       Robert M. Calica, Esq.
                      Judah Serfaty, Esq.
                      Rosenberg Calica & Birney LLP
                      100 Garden City Plaza, Suite 408
                      Garden City, NY 11530

For Defendants:       Steven G. Leventhal, Esq.
                      Huy Tu Nguyen, Esq.
                      Christine Helen Price, Esq.
                      Leventhal and Sliney, LLP
                      15 Remsen Avenue
                      Roslyn, NY 11576

SEYBERT, District Judge:

        Pending before the Court is a motion for partial summary

judgment and sanctions filed by Lexjac, LLC and Richard Entel

("Plaintiffs", "Entel" and "Lexjac") against the Incorporated

Village of Muttontown ("Muttontown" or "Defendant")[1], pursuant to

Fed. R. Civ. P. 56 and 28 U.S.C. § 1927, respectively. (Docket

Entry 93.)  Plaintiffs move for summary judgment on their

procedural due process, substantive due process, and equal

---

[1] Plaintiffs' claims against individual members of the Board of
Trustees of the Village of Muttontown were previously dismissed
on legislative immunity grounds; their claim against defendant
Bonnie O'Connell was voluntarily dismissed. See Docket Entry 46.

protection claims, all made pursuant to 42 U.S.C. § 1983. For the reasons set forth below, Plaintiffs' motion for partial summary judgment is GRANTED IN PART and DENIED IN PART; their motion for sanctions is DENIED.

BACKGROUND

This controversy concerns a 1.1 acre parcel of land in the Village of Muttontown, designated as Section 15, Block A, Lot 2079A and Lot 2079B on the Nassau County Land and Tax Map ("Smallacre").

In July 1969, the Planning Board of the Village of Muttontown approved a 28 home residential development, later called "Pond's Edge" by the developer Foreal Homes, Inc. ("Foreal"). Pl.'s Rule 56.1 Statement ("Pl.'s Stmt"), ¶ 7. This approval, however, was conditioned on Foreal's offer to "dedicate" Smallacre, which lies within Pond's Edge and adjacent to Plaintiff Entel's home, to Muttontown. Id., ¶ 8. Complying with this condition, Foreal offered Smallacre to Muttontown on July 27, 1972. See Mot. for Summ. J., Exhibit Record on Appeal from State Court Action ("Record"), p. 103. That offer would remain open for more than thirty years. Id., p. 108 (acknowledging that on October 17, 2005 Muttontown finally declined the offer).

On July 1, 1985, Foreal filed a lawsuit against Muttontown and the landowners of the 28 home development, seeking a declaration that Smallacre was not encumbered by an irrevocable

2

offer of dedication. Def.'s Rule 56.1 Statement ("Def.'s Stmt"), ¶ 16. Ultimately, on March 17, 1988, the litigation culminated in a decision by the New York Court of Appeals that affirmed the dismissal of the lawsuit on the grounds, <u>inter</u> <u>alia</u>, that "although there has been no formal acceptance by the [V]illage, [Foreal] may not now revoke its offer of dedication because the subdivision residents purchased their properties in reliance upon the park land dedication offer noted upon the subdivision map." <u>Foreal Homes, Inc. v. Incorporated Village of Muttontown</u>, 128 A.D.2d 585, 512 N.Y.S. 2d 849 (1987) <u>aff'd on op. below</u> 71 N.Y.2d 821, 527 N.Y.S.2d 756 (1988).

Offers, even irrevocable ones, may be declined, however. On December 18, 2003, Plaintiff Entel, through his wholly owned corporation Lexjac LLC, purchased Smallacre from Foreal for $90,000.00 intending to add the parcel to the yard of his home. Pl.'s Stmt, ¶ 21. The deed for Smallacre was recorded on May 17, 2004. Def.'s Stmt, ¶ 22.

Then, on October 17, 2005, the Village Board of Trustees, of which Plaintiff Entel was a member but from which he recused himself on this occasion, adopted a Resolution that formally declined Foreal's decades-old offer of dedication ("2005 Resolution"). Pl.'s Stmt, ¶ 23. Voted on and approved in a public session, the 2005 Resolution provided that "any and all right, title and interest the Village of Muttontown may have to

[Smallacre] is hereby extinguished." Record, p. 220; see also Murcott Dep., p. 28; Floyd-Jones Dep., p. 19, 26; MacKinnon Dep., p. 104, 139. As a part of a quid pro quo for declining the long-standing offer of dedication, the Village Board conditioned its declination on Lexjac's pledge to install "screen planting" along Noel Lane in a "first class manner." Record, p. 221. A couple of months later, on December 12, 2005, Entel voluntarily offered--and the Board of Trustees formally accepted by Resolution--a conservation easement in which Entel, Lexjac and any future owner of Smallacre formally relinquished their right to develop the property. Pl.'s Stmt., ¶ 26.

In 2006, Entel ran for Mayor of Muttontown against the current Mayor, Julianne Beckerman. The hotly contested election resulted in Beckerman suing Entel, as well as Muttontown, over her position on the ballot, among other things. Record, p. 70-71. After her election victory and at her behest, the newly constituted Board of Trustees adopted a Resolution on July 10, 2007 ("2007 Resolution") that purported to rescind the 2005 Resolution declining Foreal's offer of dedication and, instead, accepting this offer, effectively purporting to confiscate Smallacre from Entel. Pl.'s Stmt, ¶ 28. Aside from a terse and ambiguous exchange between Entel and Beckerman prior to the Board of Trustees' vote on the 2007 Resolution (Beckerman obliquely hinted to Entel that she wanted to "make sure he didn't do anything illegal", Entel Dep., p.

4

340), Entel received neither notice nor a hearing before Muttontown purported to appropriate Smallacre.  Def.'s Stmt, ¶ 35.

Thereafter, Plaintiffs filed suit on November 5, 2007, and now move for summary judgment on their procedural due process, substantive due process and equal protection claims under 42 U.S.C. § 1983.

DISCUSSION

I.   <u>Rule 56: Standard of Review</u>

A district court may properly grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 134 (2d Cir. 1997).

"In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 134 (2d Cir. 1997).

Mere conclusory allegations, speculation or conjecture will not avail a party opposing summary judgment, <u>see</u> <u>Kulak v. City</u>

of New York, 88 F.3d 63, 71 (2d Cir. 1996), and "[f]actual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (citing 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2725, at 93-95 (1983)).

Rule 56 places the initial burden on the moving party to demonstrate that there are no material facts in dispute and that it is entitled to judgment as a matter of law.  If and when that burden is satisfied, the burden of production shifts to the non-moving party, who may survive summary judgment only by showing that there is indeed a "genuine" issue of material fact to be decided. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

II. Plaintiffs' Procedural Due Process Claim

Before undertaking an action that will affect an interest in life, liberty or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 795, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1983) quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950).  Exactly how much process is constitutionally due is determined by balancing the government's

interests and administrative burdens against the need to protect the individual's life, liberty or property interest.  See Matthews v. Eldridge, 424 U.S. 319, 334-35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); see also Garden Homes Woodlands Co. v. Town of Dover, 95 N.Y.2d 516, 519, 720 N.Y.S.2d 79 (2000).  At a minimum, though, where the interest of a property owner will be substantially affected by a governmental act--and where the name and address of the owner are known--due process demands that actual notice be given.  See Mennonite Bd. of Missions, 462 U.S. at 799.

Here, the decisive dispute centers on the threshold question whether Plaintiffs had a constitutionally protected property interest entitling them to due process.  In this regard, Defendant makes the unremarkable point that, when Foreal executed the Smallacre deed to Plaintiff Lexjac on February 26, 2004, Foreal could not convey more than it owned--an ownership interest that was subject to a live, irrevocable offer of dedication to Defendant. Pointing out that it enjoyed the untrammeled discretion to accept the offer of dedication at any time, Defendant argues that Plaintiff did not possess a constitutionally protected property interest at the time of the purported confiscation in 2007.  Pl.'s Mem in Opp., p. 17.  In support of the last proposition, Defendant cites to case law holding that, where a governmental authority has discretion in approving or denying a land use permit, a constitutionally protected property interest in a permit may exist only where the discretion

"is so narrowly circumscribed that approval of a proper application is virtually assured." <u>Villager Pond, Inc. v. Town of Darien</u>, 56 F.3d 375 (2d Cir. 1995); <u>Natale v. Town of Ridgefield</u>, 170 F.3d 258, 263 (2d Cir. 1999); <u>Walz v. Town of Smithtown</u>, 46 F.3d 162 (2d Cir. 1995).

Defendant's argument misses the mark for at least two reasons. First, the precedent on which it relies deal with whether a litigant can establish a constitutionally protected property interest in a <u>permit</u> governing the manner in which a parcel of land may be used; by contrast, Plaintiffs aim to establish that they have a property interest in <u>real</u> <u>property</u> which was indisputably and properly conveyed to them on February 26, 2004. Second, while it is accurate to say that, at the time of the conveyance, Foreal deeded Smallacre subject to an outstanding irrevocable offer of dedication, Defendant's argument conveniently fails to consider the 2005 Resolution which, by its terms, expressly declines, and extinguishes, the offer ("any and all right, title and interest the Village of Muttontown may have to [Smallacre] is hereby extinguished." Record, p. 220).

Implicitly acknowledging that the 2005 Resolution relinquishes any claim Muttontown might have to Smallacre, Defendant's brief focuses exclusively on attempts to undermine the legitimacy of that Resolution. At the outset, it asserts that the Resolution represented a prohibited contract pursuant to N.Y. Gen.

Mun. Law §801.[2]  Section 801 provides:

> [N]o municipal officer or employee shall have
> an interest in any <u>contract</u> with the
> municipality of which he is an officer or
> employee, when such officer or employee,
> individually or as a member of a board, has the
> power or duty to (a) negotiate, prepare,
> authorize or approve the contract or authorize
> or approve payment thereunder (b) audit bills
> or claims under the contract, or (c) appoint an
> officer or employee who has any of the powers
> of duties set forth above . . . .

N.Y. Gen. Mun. Law § 801.

Because Plaintiff Entel served on the Board of Trustees which declined the offer of dedication on Smallacre on the condition that Entel leave it undeveloped and agree to maintain it, an illegal "contract" was formed, the argument goes. Thus, Defendant argues, since the 2005 Resolution was null and void, Muttontown still enjoyed the right to accept the long-standing offer of dedication and therefore Plaintiffs' interest was not constitutionally cognizable.

The Court disagrees.  The 2005 Resolution's language

---

[2] The Court declines the Plaintiffs' invitation to resolve this particular argument on the grounds of collateral estoppel or law of the case doctrine. The Court's previous ruling on Defendants' Fed. R. Civ. P. 12(b)(6) motion, subsequently relied upon by the New York Appellate Division for its finding that the parties never entered into a contract, was made in the Rule 12 context requiring the Court to assume the truth of Plaintiffs' pleadings and to make all reasonable inferences in the non-movant's favor, including that the 2005 Resolution was not a contract. <u>See</u> Docket Entry 46. Presented now with Plaintiffs' Rule 56 motion, the Court does not assume the truth of Plaintiffs' factual allegations, or draw reasonable inferences in Plaintiffs' favor.

clearly speaks in terms not of Section 801, but rather of Section 809, which governs "[e]very application, petition, or request submitted for . . . approval of a plat." N.Y. Gen. Mun. Law § 809. After reciting the history of the 28 home development, the 2005 Resolution goes on to remark that

> "[o]ver the past 36 years, the Village has not accepted [Smallacre] for recreational purposes and the Village has no future intent to accept this dedication. Accordingly, the Board of Trustees concurred that it would [be] in the best interest of the Village to remove cloud on title of this parcel and leave it in the private ownership with property owners who intends [sic] to maintain the open space area."

Record, p. 220. Accordingly, far from being the language of a "contract," the Resolution instead reflects a final (albeit belated) step in the Village's original approval of the subdivision plat in July 1969. No law or precedent adduced by Defendant, or found by this Court, suggests otherwise.

Next, Defendant argues that, even if not a prohibited contract, the 2005 Resolution was invalid because Plaintiff Entel, although recusing himself from the vote, participated in the discussion leading up to it, and also spoke about the parcel in 2002 with then-Mayor Murcott in 2002. It argues that these actions invalidate the 2005 Resolution. It must first be noted in response that Section 809 is not as fastidious as Defendant would have it. Its terms merely require that state and municipal officers "state the name, residence and the nature and extent of [their] interest

[in] . . . [e]very application, petition or request submitted for a variance, amendment, change of zoning, approval of a plat, exemption from a plat or official map." N.Y. Gen. Mun. § 809. It is beyond cavil[3] that Entel complied with this rule by disclosing his interest and abstaining from a vote; both the 2005 and 2007 Resolutions state as much. <u>See</u> Record, p. 220 (2005); p. 108 (2007).

Additionally, Defendant alleges that Plaintiffs and the former members of the Board of Trustees violated N.Y. Public Officers Law, Article VII (Open Meetings) by discussing the 2005 Resolution privately and in executive session, by neglecting to record the vote, and by approving false minutes. Def.'s Stmt, ¶ 23. Defendant's "proof" stems from two sources: the 2005 Resolution itself and the deposition testimony of one of the Trustees in 2005 (Corker). <u>See</u> <u>id.</u> These are rather incredible items for Defendant to rely on for the allegation that a proper public vote was never

_____

[3] Defendant cites to <u>Schweichler v. Village of Caledonia</u>, 45 A.D.3d 1281 (4th Dept. 2007) for the proposition that strict compliance with N.Y. Gen. Mun. Law 809 may not preclude subsequent annulment of a resolution where a biased governmental entity "prejudges" a decision. In <u>Schweichler</u>, however, the Fourth Department found that at least three of the members of a zoning Planning Board, including its chairperson, were staunch public advocates in favor of the position for which they subsequently voted. <u>Id.</u> at 1284. Such circumstances are neither alleged, nor present, here. In any event, even if it were true that the 2005 Resolution were subject to a possible annulment in 2007, until that time came Plaintiffs would still have been possessed of a property interest in Smallacre, all other things being equal.

taken, because both, in fact, support that such a vote transpired.
The 2005 Resolution states that: "After discussion, <u>and on motion
duly made and seconded</u>, the Board of Trustees, with Trustee Entel
abstaining, <u>duly adopted</u> the following preambles and resolutions.
. ." Def.'s Mem. in Opp., Ex. P, p. 11 (emphasis added). Meanwhile,
when asked whether he recalled the board vote occurring <u>as reported
in the meetings minutes</u>, Trustee Corker testified: "I would say that
it did." Def.'s Mem. in Opp., Ex. N, p. 59. When asked whether it
was his recollection that the vote occurred <u>in the public session
of the meeting</u>, he replied: "Definitely. All votes, to my
recollection occurred in public." <u>Id.</u> Such is the <u>Defendant's</u>
evidence.

Failures of proof aside, even the Defendant allows that
these purported meeting violations do not automatically void the
municipal action in question. <u>See</u> Def.'s Mem in Opp., p. 27 (citing
N.Y. Pub. Off. Law § 106). New York Public Officers Law § 107
provides that an aggrieved party may bring an Article 78 proceeding
to request that the court, upon good cause shown and in its
discretion, void an action taken by a public body in violation of
chapter 47 of the Consolidated Laws of New York. N.Y. Pub. Off. Law
§ 107. Defendant neither alleges, nor proves, that it filed such
an action. In any event, it has not furnished sufficient proof to
warrant voiding the 2005 Resolution.

Finally, Defendant quibbles with the details of

Plaintiff's deed to Smallacre and with the 2005 Resolution's noncompliance with the New York State Environmental Quality Review Act ("SEQRA"), as set forth in Article 8 of the New York Environmental Conservation Law at 6 NYCRR Part 617. The deed, Defendant argues, suffers from an insufficient legal description of Smallacre and was therefore incapable of vesting title in Lexjac. Whatever the accuracy of this assertion (Defendant's exhibit merely displays the deed which states on its face "See annexed Schedule A"), the property interests protected by the Fourteenth Amendment do not turn on the formal titles of ownership established under state law. See Pangburn v. Culbertson, 200 F.3d 65, 70 (2d Cir. 1999).

Defendant complains that when the 2005 Resolution was adopted no SEQRA compliance was performed. See Pl.'s Mem in Opp., p. 28. SEQRA requires a review of certain "actions" that may involve a significant impact on the environment and, it is argued, by declining to accept 1.1 acres of undeveloped space, the Board of Trustees may have wrought untold environmental damage. The error in this argument is twofold. First, even if there were a SEQRA violation, Defendant cites no law holding that the 2005 Resolution would be nullified in draconian fashion as a result. The Court finds none. Second, SEQRA challenges are subject to a 30-day statute of limitations. See Parker v. Town of Gardiner Planning Bd., 184 A.D.2d 937, 939, 585 N.Y.S.2d 571 (3d Dept. 1992). It was

13

therefore too late to challenge the 2005 Resolution on SEQRA grounds in 2007.

The question then becomes whether Plaintiffs received due process before their property interest in Smallacre was purportedly confiscated. Defendant asserts that Plaintiffs were apprised with actual notice that Muttontown would investigate the 2005 Resolution. Pl.'s Stmt., ¶ 35. But the sole piece of evidence it musters in support is based on a conversation between Mayor Beckerman and Entel, a year before the 2007 Resolution, in which the former obliquely hints to Entel that she would "make sure he didn't do anything illegal", Entel Dep., p. 340. It is plain to the Court that to casually inform a property owner a year before his property's purported confiscation that one member of the local government vaguely intends to audit him in some way is not to afford "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. A genuine dispute of material fact simply does not emerge from the record on this point.

On July 10, 2007, the Defendant passed a Resolution purporting to accept a decades-old, rejected offer of dedication, thereby appropriating Smallacre, which was then owned by the Plaintiffs. Pl.'s Stmt, ¶ 28. Actual notice was not provided. Pl.'s Stmt., ¶ 35. And the Defendant's actions indisputably clouded

Smallacre's title. Plaintiffs' property interest was therefore significantly impacted without the protections of due process.

Accordingly, Plaintiffs' motion is GRANTED insofar as his procedural due process claim is concerned.

III. <u>Plaintiffs' Substantive Due Process Claim</u>

To prevail on their substantive due process claim Plaintiffs must show that (1) they had a valid property interest in Smallacre; and (2) Defendant infringed on that property right "in an arbitrary or irrational manner." <u>Cine SK8, Inc. v. Town of Henrietta</u>, 507 F.3d 778, 784 (2d Cir. 2007). Governmental conduct meeting the standard set out in the second prong includes a "fundamental procedural irregularity." <u>Natale v. Town of Ridgefield</u>, 170 F.3d 258, 262 (2d Cir. 1999).

It has already been established that Plaintiffs possessed (and still possess) a valid property interest in Smallacre. <u>See</u> <u>supra</u> Section II. As for the second prong, Plaintiffs argue that the record indisputably demonstrates that Defendant's 2007 Resolution purporting to confiscate Smallacre was marked by fundamental procedural irregularity. After all, the 2005 Resolution expressly states that the "offer of dedication to the Mayor and Trustees . . . be and the same hereby is, <u>declined</u> and <u>any and all right, title and interest</u> the Village of Muttontown may have to the parcel is hereby <u>extinguished</u>. . ." Record, p. 220-21 (emphasis added). And, it is "a fundamental tenet of contract law" that "a

15

rejection of an offer . . . extinguishes the offer and renders any subsequent acceptance thereof inoperative." <u>Jericho Group, Ltd. v. Midtown Development, L.P.</u>, 32 A.D.3d 294, 299, 820 N.Y.S.2d 241, 246-47 (1st Dep't 2006); 22 N.Y. Jur. 2d Contracts § 41 ("[a]n offer is terminated by rejection and cannot thereafter be accepted"); 91 N.Y. Jur. 2d Real Property Sales and Exchanges § 23 (same, real property). So Defendant clearly acted irrationally in purporting to accept an offer that no longer existed.

Nevertheless, to satisfy the second prong of the substantive due process standard, the government's "mere irrationality is not enough: only the most egregious official conduct, conduct that shocks the conscience, will subject the government to liability for a substantive due process violation based on executive action." <u>O'Connor v. Pierson</u>, 426 F.3d 187, 203 (2d Cir. 2005). Indeed, where the governmental entity has legitimate interests which could rationally be furthered through the complained-of action, a substantive due process claim must fail. <u>See</u> <u>Harlen Assocs. v. Incorporated Village of Mineola</u>, 273 F.3d 494, 505 (2d Cir. 2001). Here, Bonnie O'Connell, president of the Pond's Edge Civic Association from 2002 to December 2006, had made complaints to several Muttontown officials, including then-Mayor Murcott and the Village Attorney, about the state of Smallacre after its acquisition by Plaintiffs. <u>See</u> O'Connell Aff., ¶¶ 21, 23; <u>see also</u> Affidavit/Declaration in Opp., Ex. H, Transcription of 10/10/06

Trustee Meeting, p. 12-13. She complained that Smallacre had become an "eyesore because the natural trees and other vegetation had been removed but no screen landscaping had been planted." O'Connell Aff., ¶¶ 21, 23. The vines, groundcover, and natural trees uprooted by Entel had functioned as a noise and light buffer and promoted privacy. Id., ¶ 13. She further informed the Board of Trustees that the community was upset by these changes. Affidavit/ Declaration in Opp., Ex. H, Transcription of 10/10/06 Trustee Meeting, p. 12-13.

These complaints illustrate that the Board of Trustees could well have had legitimate interests that would have been rationally furthered by operation of the 2007 Resolution, namely, maintaining the physical beauty and comfort of the Village through an effort to preserve the undeveloped, relatively pristine character of Smallacre. This is not to say that the Court finds the 2007 Resolution proper, or even valid; it does not. But neither can the Court find, as a matter of law, that the 2007 Resolution qualifies as egregious official conduct that shocks the conscience. Sufficient issues of fact exist as to whether Defendant acted in a good faith, albeit misguided, manner. Among other things, issues of fact exist as to whether Defendant wrongly, but in good faith, believed that it had the power to rescind the 2005 Resolution, which

it believed[4] was the product of an illegal contract under Section 801, and that so doing would further legitimate public interests.

Accordingly, Plaintiffs' motion is DENIED with respect to their substantive due process claim.

IV. <u>Plaintiffs' Equal Protection Claim</u>

To prevail on their "class of one" equal protection claim, Plaintiffs must show that they were treated different than someone who is <u>prima facie</u> identical in all relevant respects (hereinafter the "foil"). <u>Neilson v. D'Angelis</u>, 409 F.3d 100, 104 (2d Cir. 2005). This in turn requires a showing that the degree of similarity between the Plaintiffs and their foil is so high that: (1)that "no rational person could regard the circumstances of the [Plaintiffs] to differ from those of a [foil] to a degree that would justify the differential treatment on the basis of a legitimate government policy," and (2) that "the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." <u>Id.</u> at 104-05. "As a general rule, whether items are similarly situated is a factual issue that should be submitted to the jury." <u>Harlen Assocs. v. Incorporated Village of Mineola</u>, 273 F.3d 494, 499 n. 2 (2d Cir. 2001). Finally, the class-of-one plaintiff must prove

_____

[4] Mayor Beckerman's comment to Entel that she would she would "make sure he didn't do anything illegal [with Smallacre]", Entel Dep., p. 340, is evidence that members of the 2007 board well and truly believed that the 2005 Resolution was a corrupt deal.

"intentional disparate treatment", that is, that the decision makers were aware that there were other similarly-situated individuals who were treated differently.  See <u>Analytical Diagnostic Labs, Inc. v. Kusel</u>, 626 F.3d 135, 143 (2d Cir. 2010)[5].

Plaintiffs claim disparate treatment on four distinct planes: (1) theirs was the only property of such a size whose offer of dedication was purportedly accepted in the annals of Muttontown history; (2) they were uniquely denied notice and opportunity to be heard at the 2007 meeting when the offer was accepted; (3) save in Plaintiffs' case, the Defendant has never before attempted to reverse the declination of an offer of dedication; and (4) the "singling out of Plaintiffs with respect to entirely unprecedented and unwarranted proceedings to contest the accuracy, legitimacy, and correctness of the Village Board of Trustees <u>own</u> duly adopted minutes."  Pls.' Reply Mem., p. 20.

Plaintiffs have offered strong evidence in support of the first plane of disparate treatment, that theirs was the only

---

[5] In <u>Analytical Diagnostic Labs</u>, the court of appeals held that <u>Engquist v. Oregon Dep't of Agriculture</u>, 553 U.S. 591, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008) bars certain class-of-one claims involving discretionary state action. The <u>Analytical Diagnostic Labs</u> court observed that "[w]hile there may be some circumstances where <u>Engquist</u> is properly applied outside of the employment context, the case before us is not one of them. Critically, <u>the state defendants here exercised the state's regulatory power</u>" (emphasis added).  Here, too, the Defendant did not manage its internal relations so much as it exercised its regulatory, plat-approving power. Thus, to the extent that the <u>Analytical Diagnostic Labs</u> court extended <u>Engquist</u> outside of the employment context, that ruling does not apply here.

property of such a size whose offer of dedication was "accepted" in the annals of Muttontown history. For example, the 2005 Resolution states that over the past 36 years Muttontown never accepted an offer of dedication, Record, p. 220-221; the Village Attorney MacKinnon testified that the Village had a policy of not accepting parkland offers of dedication, MacKinnon Dep., p. 57; and the Mayor at the time of the 2005 Resolution testified that it was "very strongly" followed policy not to accept such offers; it was "like written in stone", Murcott Dep., p. 5-6. In showing how similarly situated property owners were all treated differently than Plaintiffs (thanks to the "written in stone" policy, their offers of dedication weren't accepted), however, Plaintiffs do not show that these foil residents, like Plaintiffs, provoked other home owners in the community to urge the Village to take ownership of their lands. See Pls.' Stmt, ¶ 19. Thus, for all the claims that Muttontown never accepted an offer of dedication for use as parkland, Plaintiffs do not demonstrate that a small parcel of land, (like Smallacre) occasioned community complaints of land despoiling (like Smallacre did) but whose offer of dedication was not accepted. In other words, it could well be the case that the Village took an unprecedented action because of unprecedented circumstances, not because of untoward discrimination.

Additionally, Plaintiffs have not adequately disputed Defendant's factual assertion that no other resolution of the Board

of Trustees (besides the 2005 Resolution) involved an agreement to release a valuable property right to an interested Trustee. <u>See</u> Def.'s Stmt, ¶ 45(d). This is not to say that this consideration voids an otherwise proper resolution. <u>See</u> <u>supra</u> Section II. But it does require Plaintiffs to show a foil whose offer of dedication was ultimately declined despite the presence of an interested Trustee. This Plaintiffs have not shown; still less have they made the requisite showing that the 2007 Resolution decision makers <u>knew</u> of such foils when they made their allegedly discriminatory decision. <u>See</u> <u>Analytical Diagnostic Labs</u>, 626 F.3d at 143.

Because these failures of proof apply equally to all of Plaintiffs' claims of discrimination, Plaintiffs' motion must fail for not being able to establish entitlement to judgment as a matter of law. Accordingly, Plaintiffs' motion for summary judgment is DENIED.

V. <u>Plaintiffs' Motion for Sanctions</u>

Plaintiffs move for sanctions against Muttontown and its counsel under the Court's inherent sanctions power and pursuant to 28 U.S.C. § 1927. The Court's inherent sanctions power may be invoked where "a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'". <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) <u>quoting</u> <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, 421 U.S. 240, 258-59,95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975). Section 1927,

meanwhile, authorizes the award of sanctions against attorneys who "so multipl[y] the proceedings . . . unreasonably and vexatiously." 28 U.S.C. § 1927.

Plaintiffs essentially argue that their claims are so clearly meritorious that the Defendant's attempt to defend against them constituted "wasteful and vexatious litigation" designed "to prolong the inevitable and inexorable." Pls.'Mem. in Supp., p. 34. They also see vexatious multiplication of proceedings in Defendant's insistence on taking "unnecessary, wasteful and duplicative depositions merely to confirm that the Village's own records were truthful and accurate," id. at 35, yet they offer no explanation of in what sense they were wasteful. Although the Court agrees with Plaintiffs that Defendant's attacks on the veracity of the Village's records was misplaced, it nevertheless does not find that sanctions are in order.

For all of Defendant's "vexations" and "bad faith" and "numerous unnecessary, wasteful" multiplicity of proceedings, Plaintiffs have no small amount of trouble citing specific examples. In any event, the Court finds that sanctions are not appropriate here.

Accordingly, Plaintiffs' motion is DENIED on this score.

CONCLUSION

For the reasons stated above, Plaintiffs' motion for summary judgment is GRANTED IN PART and DENIED IN PART; its motion for sanctions is DENIED.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March  18 , 2011
          Central Islip, New York